IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

WILMER NEGRÓN JIMÉNEZ, LISA M. SOTO
DECLET, and the conjugal partnership
constituted between them; CARMEN M.
AGOSTO FIGUEROA; MAGDALENA
NAVARRO ADORNO; LUZ S. VELÁZQUEZ
JIMÉNEZ; SONIA N. DÁVILA NEGRÓN,
ENRIQUE VEGA DE JESÚS, and the conjugal
partnership constituted between them;
ADOLFO TORRES TORRES; CARLOS R.
OTERO BARRETO; ABEL Y. SOTO MIRANDA;
IRIS NEREIDA SOTOMAYOR NEGRÓN;
WANDA I. ROSARIO PAZ, JOSÉ L. JIMÉNEZ
NEVÁREZ, and the conjugal partnership
constituted between them; PEDRO L. CRUZ
SALGADO, NANCY SANTIAGO DELGADO,
and the conjugal partnership constituted
between them; MARÍA CRUZ COLÓN;
EMMANUEL HERNÁNDEZ DÁVILA; MARÍA L.
LÓPEZ ORTIZ; JOSÉ R. SÁNCHEZ VANGAS;
YOLANDA BORRES NAZARIO, ÁNGEL M.
TORRES COLLAZO, and the conjugal
partnership constituted between them;
CARMELO MARRERO ORTIZ; HERIBERTO
SANTIAGO SOTO; ORLANDO SASTRE
NEGRÓN, MARGARITA RODRÍGUEZ RIVERA,
and the conjugal partnership constituted
between them,

Plaintiffs

v.

HERIBERTO RODRÍGUEZ-ADORNO,
individually and as Mayor of the Municipality
of Morovis; MUNICIPALITY OF MOROVIS;
and X, Y, Z, as yet unknown defendants,

Defendants

CIVIL 06-1055 (ADC)

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

CIVIL 06-1055 (ADC)                    2

On January, 30, 2006, the plaintiffs, along with their spouses and the conjugal partnerships constituted between them, filed a complaint of political discrimination against the defendants pursuant to 42. U.S.C. § 1983, claiming a deprivation of rights guaranteed by the United States and Puerto Rico Constitutions.  (Docket No. 3, at 2, ¶ 2.)  Claims under articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141, 5142 and Puerto Rico Act 100, P.R. Laws Ann. tit. 29, § 146 were also filed pursuant to supplemental jurisdiction.  (Id. at 2-3, ¶ 2, at 29, ¶¶ 6.2-6.4.)  Plaintiffs request monetary damages and injunctive relief, specifically, reinstatement to their positions with back pay and benefits, along with prejudgment interest and attorney's fees.  (Id. at 28, ¶¶ 5.6, 5.8, 5.9, at 29, ¶¶ 6.3-6.6, 7.2.)

This matter is before the court on motion for summary judgment filed by the defendants Municipality of Morovis ("the Municipality") and its mayor, Heriberto Rodríguez-Adorno ("Rodríguez-Adorno"), in his personal and official capacity.  (Docket No. 28, August 10, 2007.)  The defendants argue the plaintiffs cannot establish a *prima facie* case of political discrimination because they cannot show that the defendants' decision not to renew plaintiffs' appointments were based on "political or discriminatory animus" (id. at 1, ¶ 2), the defendants' reasons for not renewing plaintiffs' appointments are legitimate (id. ¶ 3), and in any event, the plaintiffs were all "transitory or irregular employees" who could not

CIVIL 06-1055 (ADC)                    3

have a continued expectancy of employment.  (Id. at 1-2, ¶ 4.)  The defendants also claim they are entitled to qualified immunity.  (Id. at 2, ¶ 5.)

Plaintiffs filed a response in opposition to defendants' motion for summary judgment (Docket No. 46, January 16, 2008) and defendants filed a reply to the opposition.  (Docket No. 56, February 15, 2008.)

For the reasons set forth below, and after considering the arguments of the parties and the evidence in the record, it is my recommendation that the defendants' motion for summary judgment be GRANTED.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiffs Wilmer Negrón Jiménez ("Negrón"), Carmen M. Agosto Figueroa ("Agosto"), Magdalena Navarro Adorno ("Navarro"), Luz S. Velázquez Jiménez ("Velázquez"), Sonia N. Dávila Negrón ("Dávila"), Adolfo Torres Torres ("Torres"), Carlos R. Otero Barreto ("Otero"), Abel Y. Soto Miranda ("Soto"), Iris Nereida Sotomayor Negrón ("Sotomayor"), Wanda I. Rosario Paz ("Rosario"), Pedro L. Cruz Salgado ("Cruz-Salgado"), María Cruz Colón (Cruz-Colón), Emmanuel Hernández Dávila ("Hernández"), María L. López Ortiz ("López"), José R. Sánchez Vanga ("Sánchez"), Yolanda Borres Nazario ("Borres"), Carmelo Marrero-Ortiz ("Marrero-Ortiz"), Heriberto Santiago Soto ("Santiago"), Orlando Sastre Negrón ("Sastre"), were employed with the municipality of Morovis.  (Docket No. 3, at 10-

---

[1]The facts, viewed in the light most favorable to the plaintiffs, are drawn from plaintiffs' amended complaint.  (Docket No. 3.)

CIVIL 06-1055 (ADC)                    4

26, ¶¶ 4.2, 4.8, 4.14, 4.20, 4.26, 4.32, 4.38, 4.44, 4.50, 4.56, 4.62, 4.68, 4.74, 4.80, 4.86, 4.92, 4.98, 4.104, 4.110.)  All the plaintiffs allege they are well known activists for the Progressive Democratic Party ("PDP").  (Id. at 10-26, ¶¶ 4.3, 4.9, 4.15, 4.21, 4.27, 4.33, 4.39, 4.45, 4.51, 4.57, 4.63, 4.69, 4.75, 4.81, 4.87, 4.93, 4.99, 4.105, 4.111.)

Heriberto Rodríguez-Adorno ("Rodríguez-Adorno") was elected Mayor of Morovis on November 2, 2004, on the New Progressive Party ("NPP") ticket. (Docket No. 3, at 10, ¶ 4.1.)  Rodriguez was sworn into office on January 10, 2005.  (Id.)

Between January 15, and August 31, 2005, all the plaintiffs, except for Sastre, were either dismissed or did not have their appointments renewed, and were replaced by NPP activists.  (Id. at 10-26, ¶¶ 4.4, 4.5, 4.10, 4.11, 4.16, 4.17, 4.22, 4.23, 4.28, 4.29, 4.34, 4.35, 4.40, 4.41, 4.46, 4.47, 4.52, 4.53, 4.58, 4.59, 4.64, 4.65, 4.70, 4.71, 4.76, 4.77, 4.82, 4.83, 4.88, 4.89, 4.94, 4.95, 4.100, 4.101, 4.106, 4.107.)  Sastre alleges the Municipality reduced his work hours from eight to six hours a day, but did not take the same actions against any of his NPP co-workers.  (Id. at 26, ¶¶ 4.112, 4.113.)

On August 10, 2007, the defendants moved for summary judgment claiming inter alia that the plaintiffs cannot establish a prima facie case of political discrimination because the discovery process has failed to produce any evidence

CIVIL 06-1055 (ADC)                    5

of political animus in the decision not to renew the plaintiffs' appointments. (Docket No. 28, at 1, ¶ 2, at 2, ¶ 6.)  Rather, the defendants argue that the decision not to renew plaintiffs' appointments was based on legitimate, non-discriminatory reasons.  (Id. at 1, ¶ 3.)  The defendants allege that all plaintiffs were transitory or irregular employees with no permanency in employment, and therefore no continued expectancy of employment or a proprietary right over their positions. (Id. at 1-2, ¶ 4.)  The defendants also argue they are entitled to qualified immunity.  (Id. at 2, ¶ 5.)

On August 10, 2007, the defendants filed a motion to submit Spanish language exhibits with translations to follow (Docket No. 26), on August 23, 2007, that motion was granted (Docket No. 30), and on November 16, 2007, the defendants filed their translated exhibits.  (Docket Nos. 38 & 40.)

On January 16, 2008, the plaintiffs filed a motion in opposition to the defendants' motion for summary judgment along with a memorandum of law in support thereof (Docket No. 46), an opposition to defendants' statement of uncontested facts (Docket No. 47) and an additional statement of uncontested facts.  (Docket No. 48.)

On January 16, 2008, the defendants filed a motion to submit Spanish language exhibits with translations to follow (Docket No. 45), on January 23, 2008

CIVIL 06-1055 (ADC)                    6

that motion was granted (Docket No. 49), and on February 26, 2008, translated exhibits were filed.  (Docket No. 60.)

On February 15, 2008, the defendants filed a reply in response to plaintiffs' opposition to their motion for summary judgment along with exhibits.  (Docket No. 56.)  That same day defendants filed a motion to submit translated Spanish language documents (Docket No. 55) and on February 19, 2008 that motion was granted.  (Docket No. 58.)  Defendants missed the filing deadline (see id.) and to date those translations have not been filed.

On March 17, 2008, this case was referred to me for disposition of defendants' motion for summary judgment.  (Docket Nos. 61 & 62.)

II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Declarations under penalty of perjury are given the same force and effect as affidavits.  28 U.S.C. § 1746.

To succeed on a motion for summary judgment, the moving party must show there is an absence of evidence to support the nonmoving party's position. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to set

CIVIL 06-1055 (ADC)                    7

forth specific facts showing there is a genuine issue for trial and that a trier of fact could reasonably find in its favor.  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).  The party opposing summary judgment must produce "specific facts, in suitable evidentiary form," to counter the evidence presented by the movant. López-Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000) (quoting Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994)).   A party cannot discharge said burden by relying upon "conclusory allegations, improbable inferences, and unsupportable speculation." Id.; see also Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1996)) ("'[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment.").

The court must view the facts in light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor.  See Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002).  A fact is considered material if it has the potential to affect the outcome of the case under applicable law. Nereida-González v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).

## III.  DISCUSSION

As a preliminary matter, I must note that defendants' argument that Orlando Sastre's claims should be dismissed for failure to prosecute have gone

CIVIL 06-1055 (ADC)                    8

unanswered by plaintiffs.   (See Docket No. 28-2, at 42; Docket No. 46.) Therefore, Orlando Sastre's claims should be dismissed.  See Phal v. Mukasey, 524 F.3d 85, 90 n.5 (1st Cir. 2008) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")).

In regards to their motion for summary judgment, the defendants argue the plaintiffs cannot sustain a cause of action for political discrimination under 42 U.S.C. § 1983 not only because plaintiffs have failed to produce any evidence to establish the employment actions taken against them were motivated by political or discriminatory animus, but because those actions were based on legitimate, non-discriminatory reasons.  (Docket No. 28-2, at 1-2, ¶¶ 2, 3.)  I agree.

A prima facie case of political discrimination is established by demonstrating that plaintiff (1) engaged in protected conduct and (2) that such conduct was a substantial or motivating factor in the adverse employment decision.  See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); see also Padilla-García v. Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000).

In a trilogy of cases, Elrod v. Burns, 427 U.S. 347, 354 (1976); Branti v. Finkel, 445 U.S. 507, 516 (1980); and Rutan v. Republican Party of Ill., 497 U.S. 62, 75 (1990), "the Supreme Court addressed the constitutionality of political patronage [holding] that non-policymaking public employees are protected" under

CIVIL 06-1055 (ADC)                    9

the First Amendment "from adverse employment decisions [that are] based on their political affiliations." Padilla-García v. Rodríguez, 212 F.3d at 74.  In other words, a plaintiff must prove political persuasions were a substantial or motivating factor in the challenged action.  Ortiz-Piñero v. Rivera-Arroyo, 84 F.3d 7, 11-12 (1st Cir. 1996).  In this respect, to survive a motion for summary judgment, the plaintiff has to point to evidence in the record that would allow "a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus." Rivera-Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir. 1994) (citing Nereida-González v. Tirado-Delgado, 990 F.2d at 706).  The plaintiff bears the burden of producing sufficient evidence which, "if credited, would permit a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus. . . ." LaRou v. Ridlon, 98 F.3d 659, 661 (1st Cir. 1996) (citing Rivera-Cotto v. Rivera, 38 F.3d at 614.

While "[m]erely juxtaposing a protected characteristic–someone else's politics–with the fact that plaintiff was treated unfairly is not enough to state a constitutional claim[,]" Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d 49, 58 (1st Cir. 1990), "a plaintiff need not produce direct evidence of discriminatory treatment[,]" and may rely on circumstantial evidence to support his or her

CIVIL 06-1055 (ADC)                    10

position.  Acosta-Orozco v. Rodríguez-de-Rivera, 132 F.3d 97, 101-02 (1st Cir. 1997).

Once a *prima facie* case has been established, then the employer is given an opportunity to demonstrate that it would have taken the same action regardless of plaintiff's political beliefs.  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. at 287.  The burden shifting-framework in Mt. Healthy goes directly to causation.  Padilla-García v. Rodríguez, 212 F.3d at 74.  Therefore, even if a plaintiff meets his or her initial burden of establishing that political affiliation or beliefs were a motivating factor in the adverse employment decision, "that is insufficient to establish discrimination as a matter of law because the plaintiff's case at that point does not 'distinguish[] between a result caused by a constitutional violation and one not so caused.'" Sánchez-López v. Fuentes-Pujols, 375 F.3d 121, 131 (1st Cir. 2004) (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. at 286).  The plaintiffs thus need to show there is a causal connection linking the adverse employment action to his or her political persuasions.  See Torres-Ocasio v. Meléndez, 283 F. Supp. 2d 505, 515 (D.P.R. 2003) (citing LaRou v. Ridlon, 98 F.3d at 662).

Plaintiffs may avoid summary judgment in a political discrimination case by showing that defendants were aware of plaintiffs' political affiliations, dismissed the plaintiffs, and replaced them with members of the opposing political party.

CIVIL 06-1055 (ADC)                    11

Acosta-Orozco v. Rodríguez-de-Rivera, 132 F.3d at 101-02 (reversing summary judgment due to uncontested fact that plaintiffs were all members of the adverse party, defendants knew this, and plaintiffs' duties were given to supporters of the party in power).

Similarly, evidence of "a highly charged political atmosphere coupled with the fact that plaintiffs and defendants are of competing political persuasions, may be probative of discriminatory animus." Rodríguez-Ríos v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998) (brackets, internal quotation marks, ellipses and emphasis omitted) (reversing summary judgment because political animus could be inferred from uncontested fact there was a politically charged atmosphere, plaintiff's political affiliation was well-known, supervisors were members of the opposing political party, and plaintiffs were replaced by members of the opposing party).

However, evidence that a plaintiff was a well-known supporter of the opposing party, or previously held a position in an administration controlled by the opposing party, does not establish that a defendant knew of a plaintiff's political affiliation, and therefore cannot support a claim that the defendant dismissed a plaintiff based on political animus. González-De-Blasini v. Family Dep't, 377 F.3d 81, 85-86 (1st Cir. 2004).

A. *Prima Facie* Case Under 42 U.S.C. § 1983

The only evidence plaintiffs have produced to show a causal link between their political affiliations and Rodríguez-Adorno's decision not to renew their

CIVIL 06-1055 (ADC)                    12

appointments are plaintiffs' declarations under penalty of perjury.  (See Docket No. 48-3.)  All the plaintiffs, except Rosario, stated they were replaced by NPP members.  (Id.)  All plaintiffs except for Torres, Cruz-Colón, Borres, and Cruz-Salgado have failed to show Rodríguez-Adorno was aware of their political affiliation.

1.  Plaintiffs Who Have Not Established a *Prima Facie* Case

Negrón stated his political affiliation was known to Rodríguez-Adorno because "the NPP electoral coordinator, Carmen Lydia González, impeached [Negrón's] competence to vote in the Municipality of Morovis" and because Negrón and his brother-in-law, Efrén Marrero, a well known NPP affiliate and current president of the Municipal Legislature, have had political discussions wherein Negrón's political affiliation was discussed.  (Docket No. 48-3, at 1, ¶ 4, at 2, ¶ 4.)

Agosto stated her political affiliation was known to Rodríguez-Adorno because  Agosto's daughter participated in a pair of radio panels with Rodríguez-Adorno and because Margarita Barzana, an NPP activist appointed by Rodriguez Adorno to the agency where Agosto was employed, grew up with Agosto.  (Id. at 4, ¶ 3, at 5, ¶ 4.)

Navarro stated her political affiliation was known to Rodríguez-Adorno because he is her cousin.  (Id. at 7, ¶ 3.)  Navarro testified:  "His father is my

CIVIL 06-1055 (ADC)                    13

mother's nephew and he is my mother's cousin, he is my distant cousin." (Docket No. 38-4, at 3.)

Otero stated his political affiliation was known to Rodríguez-Adorno because the mayor's wife, Norma Iris Santos-Otero, is Otero's cousin.  (Docket No. 48-3, at 17, ¶ 3.)

Soto stated his political affiliation was known to Rodríguez-Adorno because Soto worked as an electoral officer in the same school and room as Carmen Negrón Guzmán, an NPP activist and Rodríguez-Adorno's appointee as director of the Office of Citizen Affairs.  (Id. at 19-20, ¶ 3.)

Sotomayor stated her political affiliation is known to Rodríguez-Adorno not only because Diego Ortiz Morales, who was appointed to the Emergency Management Department by Rodríguez-Adorno, has known Sotomayor and her family her entire life, but also because Carmen Negrón Guzmán, appointed as director of the Office of Citizen Affairs by Rodríguez-Adorno, worked as an electoral officer for the NPP while Sotomayor worked for the PDP on various general elections.  (Id. at 22, ¶ 3 & 4.)

Rosario stated her political affiliation is known to Rodríguez-Adorno because "in one occasion after he took office he came . . . into the municipal building and personally greeted everybody, except [Rosario] and Norma Declet[,]" the only to PDP members present at the moment.  (Id. at 25, ¶ 3.)

CIVIL 06-1055 (ADC)                    14

Hernández stated his political affiliation is known to Rodríguez-Adorno because various NPP affiliates, including Diana Vega, the secretary of José Rivera Adorno, the person appointed by Rodríguez-Adorno to supervise and direct the Environmental Control and Recycling Department, would mock known PDP affiliates, including Hernández, during work hours by yelling "pa fuera es que vas," or "out you go" in Spanish.  (Id. at 31, ¶ 3.)

López stated her political affiliation is known to Rodríguez-Adorno because her neighbor is one of the mayor's closest collaborators.  (Id. at 34, ¶ 3.)

Sánchez stated his political affiliation is known to Rodríguez-Adorno because when Sánchez worked as a grocery carrier he would deliver groceries to Rodríguez-Adorno's family's home.  (Id. at 36, ¶ 3.)

Marrero-Ortiz stated his political affiliation is known to Rodríguez-Adorno because Frank Rodríguez, a member of Rodríguez-Adorno's rally team, married Marrero-Ortiz' aunt.  (Id. at 40, ¶ 3.)

Santiago stated his political affiliation is known to Rodríguez-Adorno because José Castro, who was appointed as the Municipality's Human Resources director by Rodríguez-Adorno, lives next to Santiago's grandmother and saw Santiago at several PDP rallies.  (Id. at 42, ¶ 3.)

Velázquez stated Rodríguez-Adorno was aware of her political affiliation because Ángel Adorno, Rodríguez-Adorno's uncle and an NPP activist, interviewed

CIVIL 06-1055 (ADC)                    15

Velázquez during the transition process and informed her she would be dismissed because of her political affiliation.  (Id. at 9-10, ¶ 3.)

Dávila stated Rodríguez-Adorno was aware of Dávila's political affiliation because they grew up in the same neighborhood.  (Id. at 12, ¶ 3.)  Dávila stated that Diana Vega, who was appointed by Rodríguez-Adorno to supervise and direct the Environmental Control and Recycling Department told Dávila "pa fuera es que vas" or "out you are going," in Spanish.  (Id. at 12-13, ¶ 4.)

None of these plaintiffs have stated that Rodríguez-Adorno had first hand knowledge of their political affiliation.  Rather, plaintiffs conclude that Rodríguez-Adorno must have known their affiliation because someone else close to Rodríguez-Adorno knew, or may have known, these plaintiffs' politics. Such conclusory allegations are not acceptable at summary judgment.  López-Carasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000).

Specifically as to Dávila and Velázquez, their statements that NPP members close to Rodríguez-Adorno told them they were on their way out because they were PDP members could be probative of political animus.  See Peguero-Moronta v. Santiago, 464 F.3d 29, 45-46 (1st Cir. 2006) (citing Rodríguez-Marín v. Rivera-González, 438 F.3d 72, 76 (1st Cir. 2006)).  However, neither Ángel Adorno nor Diana Vega, whom Velázquez and Dávila stated made the political remarks, are

CIVIL 06-1055 (ADC)                    16

named defendants in this action and plaintiffs have presented no argument as to why liability should be imputed upon them.

Therefore, because none of these plaintiffs have shown that Rodríguez-Adorno knew of their political affiliation, and evidence that they were replaced by NPP members on its own is insufficient to make a *prima facie* case of political discrimination, it is my recommendation summary judgment as to their claims be GRANTED.

### 2.  Plaintiffs Who Have Established *Prima Facie* Case

Torres stated his political affiliation was known to Rodríguez-Adorno because when Rodríguez-Adorno was the director of Morovis' Sport and Recreation Department, he told Torres "vente popular," or "come here, popular," in Spanish. (Docket No. 48-3, at 15, ¶ 4.)

Cruz-Colón stated that her political affiliation was known to Rodríguez-Adorno because she met him at a funeral and, while she spoke to the owner of the funeral home, the owner commented to Rodríguez-Adorno "she is a good person to [sic] bad she is affiliated to the PDP." (Id. at 29, ¶ 3.) Cruz-Colón stated she then turned to Rodríguez-Adorno and said "'you know I'm affiliated with the PDP' to which [Rodríguez-Adorno] affirmed with his head in agreement." (Id.)

Cruz-Salgado stated his political affiliation is known to Rodríguez-Adorno because twenty (20) days prior to election day the PDP and NPP caravans

CIVIL 06-1055 (ADC)                    17

converged and Rodríguez-Adorno specifically pointed at Cruz-Salgado and told him "you are going out."  (Id. at 27, ¶ 3.)

Borres stated her political affiliation is known to Rodríguez-Adorno because he acknowledged her at a PDP political rally.  (Id. at 38, ¶ 4.)

Torres, Borres, Cruz-Colón and Cruz-Salgado have presented enough evidence, through their declarations under penalty of perjury, to show that Rodríguez-Adorno knew of their political affiliations, and replaced them with NPP members.  Therefore, these plaintiffs have established a *prima facie* case of political discrimination.  See Peguero-Moronta v. Santiago, 464 F.3d at 45-46; Acosta-Orozco v. Rodríguez-de-Rivera, 132 F.3d at 101-02.

B. Mt. Healthy Burden Shifting

However, regardless of whether any of the plaintiffs have established a *prima facie* case of political discrimination, the defendants have presented legitimate, non-discriminatory reasons for not reappointing all the plaintiffs and plaintiffs have not disputed the legitimacy of the defendants' proffered reasons.

1. Law 52

Law 52 of August 9, 1991, establishes the Employment Opportunities Development Fund ("EODF") which among its causes, promotes various employment opportunities.  P.R. Laws Ann. tit. 29, § 711c(b).  To access such funds, Municipalities must submit a proposal to the Department of Labor and

CIVIL 06-1055 (ADC)                    18

Human Resources ("DLHR") and, once the grant is approved, must sign a contract "specifying how much money the municipality will receive, over what term, and how many jobs it will subsidize." Acevedo-Feliciano v. Ruiz-Hernández, 477 F.3d 115, 117 (1st Cir. 2006).  Law 52 itself does not provide a property interest in such employment.  Acevedo-Feliciano v. Ruiz-Hernández, 524 F. Supp. 2d 150, 154 (D.P.R. 2007) (finding property interest in Law 52 employment because employees were dismissed halfway through their one year contracts); see Acevedo-Feliciano v. Ruiz-Hernández, 447 F.3d at 121 (citing Caro v. Aponte-Roque, 878 F.2d 1, 4 (1st Cir. 1989)).

In a letter dated June 21, 2002, Víctor Rivera Hernández ("Rivera"), Secretary of the Puerto Rico Department of Labor and Human Resources, informed then Mayor Francisco Rodríguez-Otero ("Rodríguez-Otero"):

> [I]n those situations in which the public services are affected by the lack of personnel, said funds may be used if these services are clearly defined in the proposal submitted to the Department of Labor and Human Resources.  In the case of employees appointed to these positions in the public service, the appointments may not exceed twelve (12) months.
>
> In the event of special and creative projects, the duration of the appointments could extend to 24 months. Under no circumstances may these funds be used to maintain employees in the public service for more than 24 months, except the elderly, . . . a particular population which is purported to be protected.

(Docket No. 38-6, at 24.)

CIVIL 06-1055 (ADC)                    19

It is uncontested that the following plaintiffs were employed for at least 24 months:  Dávila (thirty-four months), Torres (thirty-one months), Soto (thirty-two months), Sotomayor (thirty-one months), Rosario (twenty-nine months), Cruz-Salgado (thirty-three months), Cruz-Colón (thirty-seven months), Hernández (thirty-two months), López (thirty-three months), Sánchez ("more than two  (2) years"), Borres (twenty-five months), Marrero-Ortiz (two years), and Santiago (two years).  (Docket No. 28-3, at 6, ¶ 35, at 7, ¶ 42, at 9, ¶¶ 55 & 60, at 10, ¶ 71, at 11, ¶ 75, at 12, ¶ 88, at 13, ¶ 94, at 14, ¶ 101, at 15, ¶¶ 111 & 116, at 16, ¶¶ 122 & 127; & Docket No. 47.)

Defendants had a legitimate reason to not re-appoint these plaintiffs because doing so would be illegal.  Plaintiffs have not shown that defendants' decision to do so was pretext for political discrimination.  Therefore, it is my recommendation that summary judgment as to these plaintiffs' claims of political discrimination be GRANTED.

2.  The Parents Fund

Defendants argue that plaintiffs Agosto and  Navarro's appointments were not renewed not only because appointments under the Parents Fund cannot exceed 30 days, but because their appointments were subject to the availability of funds and the Parents Fund had no funds in its accounts.  (Docket No. 28-2, at 14, ¶¶ 40 & 41, at 17, ¶¶ 48 & 49.)

CIVIL 06-1055 (ADC)                    20

        The Puerto Rico Family Department created a Parents Contribution Account
("Parents Fund") funds from which, among other things, temporary personnel may
be hired for a period not exceeding thirty (30) days.  (See Docket No. 38-3, at 37-
39.)  On January 26, 2005, Héctor R. Santos Rivera ("Santos"), director of the
Federal Programs Office of the Municipality of Morovis, certified that the Parents
Contribution Account did not have any funds at the time.  (Docket No. 38-3, at
40.)

        The plaintiffs deny that the use of the Parents Fund is regulated in such a
way (Docket No. 28-3, at 3, ¶ 13; Docket No. 47, at 7, ¶ 13) or that these
plaintiffs were even employed under the Parents Fund.  (Docket No. 28-3, at 3,
¶ 14, at 4, ¶ 17; Docket No. 47, at 7, ¶ 14, at 8, ¶ 17.)  However, the defendants
presented documentary evidence to the contrary:   a letter signed by Santos
stating that appointments under the Parents Fund must be "a maximum of thirty
(30) days" (Docket No. 38-3, at 39), and records from these two plaintiffs'
personnel transactions noting that their appointments were pursuant to the
Parents Fund.  (Docket No. 28-3, at 3, ¶ 14, at 4, ¶ 17; Docket No. 38-2, at 5-29;
Docket No. 38-3, at 1, 10-21.)

        Plaintiffs do not deny the Parents Fund's existence, and admit they were
aware their appointments would not be renewed due to a lack of funds.  (Docket
No. 28-3, at 3, ¶ 15, at 4, ¶ 16; Docket No. 47, at 8, ¶ 15, at 9, ¶ 20.)

CIVIL 06-1055 (ADC)                        21

### a. Carmen M. Agosto Figueroa

Agosto was a transitory or irregular employee.  (Docket No. 28-3, at 2, ¶ 9; Docket No. 47, at 5, ¶ 9.)  Agosto was initially appointed to work as a janitor under the title of "Worker I" at the state-run daycare center "Ronda de Niños" from October 7, 2003, to November 6, 2003.  (Docket No. 28-3, at 2, ¶ 7; Docket No. 47, at 4, ¶ 7; Docket No. 38-2, at 1.)  Between November 6, 2003, and January 15, 2005, Agosto's appointment was renewed on a monthly basis. (Docket No. 47, at 4, ¶ 7; Docket No. 38-3, at 1-31.)  From February 15, 2004, to January 15, 2005, Agosto was paid from the "Parent's Fund."  (Docket No. 28-3, at 3, ¶ 14; Docket No. 38-3, at 5-29.)

During this time period, on September 28, 2004, Agosto was informed by the then Mayor Rodríguez-Otero, that her temporary appointment would be "extended from October 1, 2004 to September 30, 2005, subject to the availability of funds."  (Docket No. 28-3, at 3, ¶ 11; Docket No. 47, at 6, ¶ 11; Docket No. 38-3, at 41.)  Subsequently, on January 26, 2005, Agosto's appointment was terminated.  (Docket No. 38-3, at 42.)

Agosto's tenure under the Parents Fund ran from February 15, 2004, to January 26, 2005, almost a complete year.  Agosto was informed that her position was subject to the availability of funds and Santos certified there were no funds left in the Parents Fund.    Therefore, defendants proffered reasons for not

CIVIL 06-1055 (ADC)                    22

renewing her appointment – that it exceeded the Parents Fund's thirty (30) day maximum and the Parents Fund lacked funds – are legitimate.

### b. Magdalena Navarro Adorno

Navarro was a caretaker at Ronda de Niños from April 14, 2004, to January 31, 2005, was also employed under the Parents Fund and was a transitory or irregular employee.  (Docket No. 28-3, at 4, ¶ 17; Docket No. 38-4 at 1, 10-21.)  On September 28, 2004, Navarro was informed by then Mayor Rodríguez-Otero that her temporary appointment would be "extended from October 1, 2004 to September 30, 2005, subject to the availability of funds. (Docket No. 28-3, at 4, ¶ 20; Docket No. 47, at 9, ¶ 20; Docket No. 38-4, at 29.) On January 26, 2005, Navarro received a letter from Mayor Rodríguez-Otero stating she would be terminated from her appointment effective January 31, 2005.  (Docket No. 38-4, at 27.)

Navarro was employed under the Parents Fund from April 14, 2004, to January 31, 2005, a total of eight (8) months.  Navarro was informed that her appointment would be subject to the availability of funds and Santos certified there were no more funds left in the Parents Fund.  Therefore, defendants' proffered reasons for not renewing Navarro's appointment – the thirty (30) day maximum established by the Parents Fund and the fact the Parents Fund lacked funds – are legitimate.

CIVIL 06-1055 (ADC)                    23

### 3.  Law 184

Defendants argue that, regardless of the Parents Fund, Agosto and Navarro's appointments, along with Velázquez', were illegal because they were renewed during a ban on personnel transactions proscribed by Law 184 of August 3, 2004 ("Law 184").

Section 6.9 of Law 184, prohibits personnel transactions in public agencies, that is, appointments, promotions, demotions or transfers, within two (2) months before or after the General Elections of Puerto Rico.  P.R. Laws Ann. tit. 3, § 1462h.  An exception from this prohibition may be made by the director of the Human Resources Office of the Commonwealth of Puerto Rico.  Id.

Elections in Morovis took place November 2, 2004.  The electoral ban therefore began September 2, 2004, and ended January 2, 2004.

### a. Carmen M. Agosto Figueroa

On September 28, 2004, Agosto was informed by the then Mayor of Morovis, Francisco L. Rodríguez-Otero ("former Mayor Rodríguez"), that her temporary appointment would be "extended from October 1, 2004 to September 30, 2005, subject to the availability of funds." (Docket No. 28-3, at 3, ¶ 11; Docket No. 47, at 6, ¶ 11; Docket No. 38-2, at 41.)  Subsequently, on January 26, 2005, Agosto's appointment was terminated.  (Docket No. 38-2, at 42.)  Rodríguez-Otero's re-appointment of Agosto occurred 26 days into the

CIVIL 06-1055 (ADC)                    24

electoral ban.  There is no evidence or argument there was a waiver from the director.  Therefore, Agosto's appointment was in contravention of Law 184.

### b. Magdalena Navarro Adorno

On September 28, 2004, Navarro was informed by former Mayor Rodríguez-Otero that her temporary appointment would be extended from October 1, 2004 to September 30, 2005, subject to the availability of funds.  (Docket No. 28-3, at 4, ¶ 20; Docket No. 47, at 9, ¶ 20; Docket No. 38-4, at 27-29.)   Rodríguez-Otero's re-appointment of Navarro occurred 26 days into the electoral ban.  There is no evidence or argument there was a waiver from the director.  Therefore, Navarro's appointment was also in contravention of Law 184.

### c. Luz S. Velázquez-Jiménez

Velázquez worked as the director of "Ronda de Ninos" under a professional services contract effective October 18, 2004, to September 30, 2005.  (Docket No. 28-3, at 4, ¶ 21; Docket No. 47, at 9, ¶ 21; Docket No. 38-5, at 1-2.) Velázquez professional services contract was initiated forty-six (46) days into the electoral ban.  There is no evidence or argument there was a waiver from the director.  While the plaintiffs do argue that professional services contracts are not covered by Law 184, they neither provide where in Law 184 such a proposition is made, or case law which sets out such a proposition.  See United States v. Zannino, 895 F.2d at 17 (noting it is not enough to mention an argument and

CIVIL 06-1055 (ADC)                    25

leave the court to do counsel's work).  Therefore, Velázquez' appointment was in contravention of Law 184.

Even assuming Velázquez' appointment somehow fell outside the ambit of Law 184, her contract expressly provided it could be rescinded with 30 days notice: "The party expressly agree that this contract may be rescinded by written notification of any of the party thirty (30) days in advance."  (Docket No. 28-3, at 5, ¶ 25; Docket No. 47, at 10, ¶ 25; Docket No. 38-5, at 3, ¶ 13.)   On January 12, 2005, Velázquez received a letter from Mayor Rodríguez informing her that her contract would be terminated February 28, 2005.  (Docket No. 28-3, at 5, ¶ 26; Docket No. 47, at 10, ¶ 26; Docket No. 60-9.)  Plaintiffs argue that "[n]o cause was provided for the termination of Mrs. Velázquez . . . other than Defendants' contention that they could dismiss her at any time by providing a 30 days notice."  (Docket No. 46, at 11.)  However, nothing in Velázquez' contract requires there to be cause for the contract to be terminated.   Therefore, defendants' proffered reasons for terminating Velázquez contract – that it was initiated in contravention of Law 184 and because it could be rescinded with thirty (30) days notice – are legitimate.

4.  Wilmer Negrón Jiménez & Carlos R. Otero Barreto

Both Negrón and Otero held transitory positions which were set to expire in January 2005.  Both men were offered a position with the Municipality of Morovis that same month and both men turned down the Municipality's offer.

CIVIL 06-1055 (ADC)                    26

Wilmer Negrón Jiménez ("Negrón") began working as an irregular employee on October 7, 2003, in the position "Worker I."  (Docket No. 28-3, at 1, ¶ 2; Docket No. 47, at 1, ¶ 2; Docket No. 38-2, at 1.)   From July 1, 2004 until January 15, 2005, Negrón worked in the position of "Clerk I."  (Docket No. 28-3, at 1, ¶ 2; Docket No. 47, at 1, ¶ 2; Docket No. 38-2, at 3.)  On January 14, 2005, Negrón received a letter informing him that his appointment would not be renewed.  (Docket No. 28-3, at 2, ¶ 3; Docket No. 47, at 3, ¶ 3; Docket No. 38-2, at 5-8.)  On January 26, 2005, Negrón received a job offer with the Municipality in one of several transitory positions.  (Docket No. 28-3, at 2, ¶ 4; Docket No. 47, at 3, ¶ 4; Docket No. 38-2, at 9-11.)  Negrón turned down these offers.  (Docket No. 28-3, at 2, ¶ 5; Docket No. 47, at 3, ¶ 5; Docket No. 38-2, at 12-13.)

Carlos R. Otero Barreto ("Otero") was appointed to the transitory position of Office Clerk I on October 2, 2003.  (Docket No. 28-3, at 7, ¶ 43; Docket No. 47, at 16, ¶ 43; Docket No. 38-8, at 1.) Otero's appointment was renewed monthly until July 17, 2004, when he was given a transitory appointment effective through January 15, 2005.  (Docket No. 28-3, at 7-8, ¶ 44; Docket No. 47, at 16, ¶ 44; Docket No. 38-8, at 3-20.)  On January 14, 2005, Otero received a letter reminding him of the end of his temporary appointment and informing him he would be terminated after it expired.  (Docket No. 38-8, at 19-20.)   On January 26, 2005, Otero was offered one of several positions with Morovis.

CIVIL 06-1055 (ADC)                    27

(Docket No. 28-3, at 8, ¶ 47; Docket No. 47, at 17, ¶ 47; Docket No. 38-8, at 23-25.)  Although Otero apparently went to the Morovis Human Resources Office on March 28, 2005, to inquire about filling one of the positions, he never applied to be employed in any of them.  (Docket No. 28-2, at 26, ¶ 25; Docket No. 46, at 15-16.)

For all intents and purposes, Negrón and Otero, as transitory employees, were at-will employees who did not have a property interest in their employment once their appointments ended.  Gómez v. Rivera Rodríguez, 344 F.3d 103, 111 (1st Cir. 2003) (citing King v. Town of Hanover, 116 F.3d 965, 969 (1st Cir. 1997)); see also Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 94 (1st Cir. 1997); Caro v. Aponte-Roque, 878 F.2d 1, 4 (1st Cir.1989).  Therefore, the defendants need not have an explanation as to why Negrón and Otero's appointment were not renewed.  Gómez v. Rivera Rodríguez, 344 F.3d at 111 (citing Smith v. F.W. Morse & Co., 76 F.3d 413, 426 (1st Cir. 1996) (explaining that "an employer can give an at-will employee-even one who has been a stellar performer-her walking papers at any time, for any reason or no reason")).

IV.  Due Process, Law 172, and Normative Letter 05-2004

Next is defendants' contention that summary judgment is warranted with respect to plaintiffs' procedural due process claim.  It is a longstanding principle of constitutional law that a state cannot discharge a public employee who

CIVIL 06-1055 (ADC)                    28

possesses a property interest in continued employment without due process of law.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985).  But the requirement that due process be safeguarded presupposes the existence of a constitutionally cognizable property interest.  See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).  The question of whether there is such a property interest must be answered looking at extra-constitutional sources:  these rights are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . ." Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d at 53 (quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. at 577).

The Due Process Clause guarantees an employee vested with such constitutionally recognized property interest, the right to a pretermination hearing.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 542.  This "pretermination process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his [or her] side of the story." Gilbert v. Homar, 520 U.S. 924, 929 (1997) (citing  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 546).  In fact, in Loudermill the Supreme Court stated that all that is required is some kind of a hearing; "an initial check against mistaken decisions–essentially, a determination of whether there are reasonable grounds to believe that the charges against the

CIVIL 06-1055 (ADC)                    29

employee are true and support the proposed action." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 545-46.  The opportunity to be heard must be given, however, "at a meaningful time and in a meaningful manner." Mard v. Town of Amherst, 350 F.3d 184, 192 (1st Cir. 2003) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).  The Supreme Court of Puerto Rico has endorsed the view that a pretermination hearing does not need to be formal, lengthy or elaborate. See U. Ind. Emp. A.E.P. v. A.E.P., 146 D.P.R. 611 (1998); see also Torres Solano v. P.R.T.C., 127 D.P.R. 499 (1990).  Such a right to a hearing relies on a property right.  It is fairly clear that transitory employees do not have a property right in continued employment and because this is so, that their temporary employment contracts are not renewed may be subject of a claim, or claims, but not a due process claim.  Since even transitory employees have a right to be free from political discrimination, the burden shifting requires that the defendant show a non-discriminatory reason for the action taken, such as lack of funding, or that an appointment was made in violation of the law.

Plaintiffs argue that Law 172 of July 30, 2004 ("Law 172") and the Special Normative Letter Number 5-2004 issued by the Office of Human Resources establish that the plaintiffs had "a clear expectancy of a career, permanent position[.]"  (Docket No. 46, at 35.)  I disagree.

CIVIL 06-1055 (ADC)                    30

Section 1 of Law 172, amending Section 4 of Act No. 56 of August 16, 1989, provides that transitory employees who hold positions with "permanent functions in the career service for a period equal to the probation period established for the class of the position . . . shall acquire . . . the condition of regular employee[.]" P.R. Laws Ann. tit. 3 § 1461, special provisions.

On August 16, 2004, Carmen D. Rosario-Morales, director of the Office of Human Resources of the Commonwealth of Puerto Rico, issued the Special Normative Letter No. 5-2004 which specified that a nominating authority may transfer eligible employees from temporary to permanent positions effective June 30, 2004 (Docket No. 60-12, at 8, ¶ a), and such "change in status procedures must have been completed not later than September 1, 2004.  After that date, the agencies will not retain temporary employees in positions of a fixed duration performing permanent career service duties[.]" (Id. at 9, ¶ e.)  Those agencies and municipalities that had not completed the transition by September 1, 2004, were authorized to do so until January 10, 2005, during the prohibition period set forth by Law 184.  (Id. at 10, ¶ g.)  The normative letter specifically noted that the norms set forth therein were not to be interpreted as a precedent for future temporary employment situations.  (Id. at 5.)

Rodríguez-Adorno was sworn into office January 10, 2005, at the end of the prohibition period of which the normative letter speaks.  In other words, it was up

CIVIL 06-1055 (ADC)                    31

to former Mayor Rodríguez-Otero, and not Rodríguez-Adorno, to make the transitions which the normative letter and Law 172 outline.

## V.  QUALIFIED IMMUNITY

I will not bring owls to Athens.  The law is clear, and was clear in 2004, that political affiliation could not be the motivation for defendants' adverse employment action against plaintiffs.  Cruz Báez v. Negrón Irizarry, 360 F. Supp. 2d 326, 348 (D.P.R. 2005) (citing Nieves-Villanueva v. Soto-Rivera, 133 F.3d at 98; Cheveras Pacheco v. Rivera González, 809 F.2d 125, 127-29 (1st Cir. 1987)). Therefore, it is my recommendation qualified immunity not be granted.

## VI. CONCLUSION

In view of the above, I recommend that defendants' motion for summary judgment be GRANTED.  All but four of the plaintiffs have shown that Rodríguez-Adorno was even aware of their political affiliation.  That fact notwithstanding, the defendants provided legitimate reasons for the adverse employment actions taken against plaintiffs and plaintiffs did not argue these reasons were pretext.  Finally, plaintiffs were not entitled to a property interest in their positions under Law 172. Since the claims under which this court has original jurisdiction – plaintiffs' 42 U.S.C. § 1983 claims – are dismissed, I recommend that claims brought under supplemental jurisdiction be dismissed as well.

CIVIL 06-1055 (ADC)                     32

     Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.   Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

     At San Juan, Puerto Rico, this 23d day of June, 2008.

                         S/ JUSTO ARENAS
             Chief United States Magistrate Judge